Good morning. May it please the court. I'm Valerie Edwards on behalf of the plaintiff appellants. I'd like to reserve five minutes of my time for rebuttal. I'll keep track of my time. We're requesting that this court reverse summary judgment that was entered in the and Malina Hernandez and reverse the dismissal of the DeBaggis cause of action. There are four reasons why the court should reverse the summary judgment. One is that the district court ignored evidence that the documents were recorded in violation of the False Documents Act. Two is that it misapplied the underlying mandate from the prior appeal. Three is that it improperly held that the claims were barred by a notice provision in the deed of trust. And four is that it also improperly held that Mrs. Silvis had settled the false documents claim. Looking at the first two reasons why reversal is appropriate, the mandate that was entered in the prior appeal reversed the dismissal of the false documents cause of action in its entirety. False documents or forgery? False documents. Well, this court's subsequent order made it very clear what's left in the case. What do you think's left in the case? It's a false documents cause of action. No, it's not. What do you think is left in the case? Answer my question. Don't tell me this theoretical thing. Or let me be specific. The court's order says this court's order says that the court's order is to remove the false documents claim from the case of robo-signing and forgery. And most of your effort appears to be to figure out a way to pull in a false documents claim based on other parts of the statute or to redefine the word forgery to squeeze in those claims under forgery. So I'm going to start with a question. What's left in this case? Is it anything more than robo-signing and forgery? Yes, Your Honor, it is more than that. Well, then how does that how is that consistent with the court's order? It's consistent with the mandate that was issued by the court. I didn't ask that question, did I? I asked how is it consistent with the court's order? The court's order, which came out subsequent to the mandate, couldn't be more explicit. I just read it to you. And you're busy telling me disregard that. There's more left in the case. And I'm trying to figure out how and why. How you should disregard that order, which was the order on our petition for appeal of the denial of the class certification motion. And by the same panel as wrote the earlier order, right? Yes. And they describe what they've done in the earlier order. I'll concede that's a difficult hurdle for me to bear. Maybe you try to go you mean you're busy going around it. I think you need to face it head on. We're not likely to consider anything other than what the previous panel has said is left in the case. That's just kind of how it is. You're lost on everything else. Well, the order on the petition for class certification, where the same panel basically said that Judge Teelberger, the district court's interpretation of the mandate was correct, was based on the position that the claims related, the other claims related to the false document count had been waived on appeal, but they hadn't. But whose problem is that? You've got a decision from this court saying they're waived. And that decision isn't directly challenged. You just wait a couple of years and try to bring it up again. That's not going to happen. We are bound by the decision of the prior panel, aren't we? Not necessarily. Under the Gonzalez v. Arizona case, that was an en banc review of a previous decision where the court looked at the doctrines of law of the case and the law of mandate. And it was noted that law of the case is intended to eliminate judicial inefficiency. However, it's a discretionary rule. And because it is a discretionary rule, it's not so hard and fast as normally. Well, even assuming that's the standard, why should we exercise discretion to add things to your case that the prior panel didn't keep in? The prior panel did keep in, and that in the mandate, if you review the mandate, it goes through the four grounds that the district court utilized to dismiss count one of the consolidated amended complaint. And it addresses those. And in so doing, it talks about how the court first determined that the type of documents that were at issue were at issue. When was this mandate that you're trying to rely upon issued? June 12, 2014, Your Honor. And we're talking about an order that was filed on March 25, 2016. So telling me what happened in 2014 isn't a really good explanation for why we should disregard the order entered two years later, I don't think. Why should we ignore the order entered in March of 2016? I think you should ignore the order in March of 2016 because that panel made it — Didn't understand what it had done before? I think they overlooked the underlying issues that were raised on that appeal. And did you seek en banc review of the order that was entered last year? Yes, Your Honor, we did. Did you get it? Did you get en banc review? It was denied without any comment. Did you — in that petition for rehearing that you filed, did you say to the panel, well, I think you misunderstood what you did before? Yes, we did. And they didn't change it, so it seems like they don't think they misunderstood what they did before. They could have revised the second order, but they didn't. So it suggests that they don't think they misunderstood their own action. So here we are with that action. So why should we think you've got a better handle on what Judges Tshima, Fletcher, and Nguyen intended than Judges Tshima, Fletcher, and Nguyen decided what they intended? I mean, I don't understand what you're trying to do in — what you're trying to accomplish in trying to say we should disregard what that panel decided was its own decision. I think you're going to be better off accepting that was their decision and figuring out what's left of the case and why we should do something different on what's left of the case. But I'm only one of three, so if you want to try to persuade my colleagues that you've got something beyond robo-signing and forgery, good luck with that. Well, there are other reasons incorporated within the robo-signing and forgery arguments, especially if you use the definition that the district court applied to the determination of forgery, which is that the documents were — Which appears not to be the definition of forgery used elsewhere, including by this Court and by the Arizona courts. Are you prepared to acknowledge that? I mean, forgery usually means either signing somebody else's name — I mean, that's classic forgery. And the definition of forgery you're trying to offer to us really becomes any false document. So even if this — and you've acknowledged this with regard to some of your claims, that, well, yes, that person was the person who signed. No, we don't have any evidence that the person whose signature appears there was signed by other than that person or with that person's authorization. So this is basically an attempt to turn forgery into false documents generally. Is that correct? And if the answer is yes, why should we do that when the statute has provisions for false documents, claims that are now out of the case based on the prior panel's decision? Why should we let forgery mean forgery? The definition used by the district court basically is a criminal definition, and because the statute under which the claims are brought is a penalty statute, it saw fit to use that definition. And it talks about documents that are falsely made. So falsely made includes the statements that are considered false. And so, in other words, the defendant is not allowed to use a definition that is not contained within the document. And so, and — I understand all that. I just set that up for you by saying you're trying to use a definition other than that that's been used by this Court and by the Arizona courts. Now, I will accept your characterization of the district court's definition, but the question I ask you is why should we use that broad definition that sweeps in all the false document-type claim? Why shouldn't we just use forgery to mean what forgery is commonly understood to mean? And the answer you're giving me is, well, the district court had this definition, which doesn't seem to be an answer to my question. I know you're citing the district court as a sort of severe definition. My question is why should we use that definition and not take forgery to mean what forgery is usually understood to mean? That's the question I'm trying to pose to you. Thank you, Your Honor. The definition is appropriate in the context in which you're viewing these documents, which is forged documents under the — forged or robo-signed documents under the false document statute. And in order to have a robo-signing claim — Do you have to convince us that when the prior panel meant forgery, they meant this thing that the district court came up with, not the thing that usually people mean when they say forgery? The district — I beg your pardon, Your Honor. So the mandate says that you can pursue forgery, right? And so if you're going to say this is still in the case, then when we try to figure out what forgery meant in the mandate — in the order that's the most recent order from our court, we have to assume to agree with you that our court meant forgery to mean not the thing that the Arizona courts and our court have usually said, but instead this definition the district court came up with. The court also looked at robo-signing as part of the mandate. And — Well, robo-signing can be forgery. Because you've got this thing or people — it doesn't have to be a robot — people signing somebody else's name without authorization. Correct. And it can also be people signing their own name to a high volume of documents, which is exactly what we had here with Jennifer Hamlin and with the — What's illegal about signing a lot of documents? The thing that is illegal here is that these documents make false statements. But now you're adding something that's not the definition of forgery usually, a document containing a false statement is not usually understood to be a false — I mean, a forged document. Under the district court's definition, it is. Is there any reason to assume that our court in 2016, the more recent one, used that definition that the district court used? In 2016 — The claims that are left are robo-signing and forgery. Is there any reason to think that when we said forgery, we didn't mean forgery in the usual way that our court means forgery? The opinion doesn't say what that panel had in mind. But it did say that we had stated a claim for robo-signing, which if we're going to — Is there a cause of action for robo-signing in the Arizona statute? I don't think there is. No, the 33-420 does not say robo-signing, but it does say otherwise invalid. And so robo-signed documents, and the ones in particular, the ones here, are otherwise invalid because they have signatures that are made by a signing officer of MERS, who is Wells Fargo or Bank of America or Bank of New York Mellon or Tiffany & Bosco. And those assertions in these documents that MERS was the beneficiary and that they had authority to assign the deed of trust to a substitute trustee — to a new beneficiary, who in turn turned around and appointed another trustee for foreclosure purposes, and then who issued a notice of trustee sale, those all are based on a robo-signing where the person didn't — there was no legal authority by that point for them to sign on behalf of MERS as the beneficiary because if you look at the reports that were submitted as part of the exerted record, and I can give you specific page citations for those that show that all of these loans were securitized outside of the MERS system, and at that point, MERS was no longer the beneficiary. It was the trustee of the trust to which — So none of this talks about forgery as it's customarily understood. You're basically trying to make out a case that the reference to robo-signing, which is not itself a violation under the Arizona statute, gives you permission to bring back all the false statement-type theories that the Court seemed to have determined had already been waived and were no longer in the case, all through the word robo-signing. And you can make that argument, but am I right with that understanding that we're not talking about forgery anymore? Yes, Your Honor, you're correct. Okay. So, and then in terms of the notice, I only have 18 seconds of my reserve time left. The notice requirement in the deed of trust doesn't apply to this type of a claim. The cases that were cited by defendants show that those cases were breach of contract cases, they were motions to dismiss, and except for one, one is on appeal, and it's, I believe, could be on the court's oral argument schedule for December. Well, do you have any authority that says a requirement to give notice before filing suit doesn't apply to a claim like this? I do have authority, and it's cited in one of the cases that were cited by the defendants, which were otherwise distinguishable. Well, no, that's something different. You can say that the cases cited by defendants are distinguishable. My question is, do you have anything, and it may be the case that all or most of the cases cited by defendants pertain to different kinds of causes of action, breach of contract or something else. I'm asking you, is there anything that says that this cause of action falls outside of a clause that otherwise would appear to require pre-suit notice? The allegations in the complaint, the type of claim that it is, it's a statutory claim. Right. So do you have any authority that tells me that that kind of statutory claim is not subject to a pre-suit notice clause? Well, the notice itself is the case. Question. Do you? This is a yes or no question. Do you have any authority that says the pre-suit notice clause in a contract does not apply to a statutory claim of this nature? Yes, Your Honor. And what is that authority? It's cited in NIAS v. Bank of America and it's the Gerber v. First Horizon Home Loans Corporation, which is a case out of the Western District of Washington, which noted that a breach of notice provision doesn't involve a statutory Consumer Protection Act claim. Well, do you have a citation? I mean, this apparently is not a case that's actually cited in the brief. So do you have a citation that gives us something to look to? The NIAS case is cited in the brief. Yes, well, but you're telling me that there's a case cited in a brief that includes itself a citation to a case? Well, you know, we don't check out all the second and third level citations on our own. So if there's a case you want to look to, please give us the citation to that case. Okay. The NIAS case is cited in the brief and it cites... But I think you're telling us it's the Gerber case we should look at. Yes. The Gerber case is 2006, Westlaw, 581-082. And then in the Giotic v. Aquin case, which is also cited in the brief and which is also on appeal to this circuit, that court, the California District Court, noted that the Kim v. Shellpoint Partners matter, which is 2016, Westlaw, 124-1541, held that the notice provision did not bar a TILA claim because the duties were statutory and didn't arise under the deed of trust. And that's the same kind of situation that we have here is because this is a statutory cause of action and the duty to not file false documents or forged or robo-signed documents arises under the false documents claim, not under the deed of trust. Can I ask you a question about DeBaggis? You argue in your brief that the District Court had supplemental jurisdiction over DeBaggis because he was represented by the same law firm as the Robinsons and Silva's. I've never heard of that as a basis for supplemental jurisdiction. Do you have any other basis for supplemental jurisdiction? The authority is the NRA Caterpillar case that was cited in our brief. And what proposition in that case are you relying on? That case allows amendment of a multi-district litigation complaint to add additional plaintiffs. But there has to be jurisdiction, right? And so what is the basis for supplemental jurisdiction? Can you say that it arises out of the same case or controversy as the other actions? Are the facts the same underlying facts? Yes, Your Honor. Same underlying facts, different documents. Same theory or same underlying facts? Same theory. Okay. So I think you need it to be the same underlying facts. Do you have anything that says the same documents were at issue in both cases? Each plaintiff had a different set of documents. Different properties. Correct. Different loans. Correct. And so the basis is that because it was a multi-district litigation and Judge Tilburg had taken jurisdiction of the portion of the Robinson-Silvas complaint that had originally been filed in Tucson under into the Phoenix jurisdiction, that the ---- In fact, they're part of the same district. They're different divisions within the district. So all of this involved Arizona property, Arizona plaintiffs. The case could have been filed separately within the District of Arizona. It just wasn't filed that way. But it could only be filed in Federal court if there's Federal jurisdiction, right? And I don't understand the basis for Federal jurisdiction. It's a State law claim. I didn't see anything saying there was enough amount in controversy. What's your basis for Federal jurisdiction over the DeBagis case? Diversity. And where do you say anything about the amount in controversy then? Theoretically, it could meet the amount of controversy requirement if you look at the total value of the claim. Is that anywhere in the record that we can look, that we could find it? I can't cite to you right as I stand here today. So I have to double check. I believe it is. Well, we'll give you two minutes for rebuttal. If you have it here and can find it, that would be helpful. All right. Thank you. Good morning. Bobby Procher on behalf of Appalee's Mortgage Electronic Registration Systems, Inc., which is MERS and MERS Holdings, Inc. We are going to split our time with a co-appalee who's representing certain other lenders as well, with me taking 12 minutes and my counsel taking eight. Are you dividing issues or what is the difference between the two? Well, the one issue that I do not know to address is the notice issue you were asking about. That's particular to Mr. Yanouskis' claim. The rest of the issues, though, I intend to address. And to be clear, we are here just on that one claim, which is by, I think, seven individuals who are seeking the statutory penalty of $5,000 under this Arizona statute 33-420, which you know the purpose is to protect property owners from having their title clouded. And as this court recognized, there's only four means specifically set forth in the statute where there can be a violation, forgery, groundlessness, material misstatement, or false claim, or quote, otherwise invalid. But as this court recognizes, there's only one area that's particularly pertinent for this review, and that's forgery. And it's for the reasons alluded to because this court originally affirmed the dismissal of the consolidated amended complaint, which had 12 claims in it. And the court below, the district court, had granted the dismissal on all 12. This court affirmed dismissal on 11 of the 12 and reversed the one claim, the 33-420 claim. And with the limitation that it was limited only to robo-signing and forgery. And by the way, I think what it meant by robo-signing and forgery was a collective term that the forgery, which is the violation, could have been done through perhaps an act of robo-signing. Because as the court recognizes, robo-signing in and of itself is not a violation. There's something illegal about it. In fact, I'm not sure what the definition of it is, but it's a means to explain perhaps how that forgery was done. And by the way, not only did the court say explicitly in its refusal to, I mean, in its clarification about the mandate that it was limited, it went on to say to the extent the petitioners now seek to challenge the MDL's court's dismissal of count one as to allegations beyond robo-signing and forgery, that challenge is raised because it wasn't raised in the first appeal. The district court was quite thorough and meticulous in going through on summary judgment all of the evidence that was proffered in regard to the forgery count. And it granted summary judgment on all of the plaintiff's claims that challenged documents were forged because literally there was not a piece of evidence. I mean, there was not one shred of evidence that any of these documents were forged as that definition is commonly understood, which the court, the district court, really took the criminal statute, I think it's 13-2001, 17 definition for forgery, which essentially is the false banking, the false altercation, the false completion of a document, and said under that definition of forgery, which is usually the common understanding, there literally was no evidence that it was signed by somebody who wasn't the person it purported to be or that the document was altered in some way whatsoever. And the plaintiffs pretty much acknowledged that. I mean, they do not take issue that these documents were forged in any way as that definition is understood, because there was no evidence. In fact, the evidence below that was there is that these documents were executed by the right people, they were notarized properly in front of people, and whatnot. What the plaintiffs want to do, because the forgery, anything beyond forgery was waived, was to try to force this idea that false statements in a document are somehow a forgery. And that's just not the case. And not only is that not the case, that if you look at the case law we cited, it repeatedly, whether it's the district courts, I mean the state courts in Arizona, the United States Supreme Court, and the Ninth Circuit, has repeatedly said that forgery really goes to the genuineness or the authenticity of the document. And I'll just refer this Court to two Ninth Circuit cases on that. One is U.S. v. Price, 1981, where it says, look, forgery is the false making with the intent to defraud a document of one that it purports not to be, which is distinct from a document that is genuine but contains a term or representation known to be false. So the distinction, according to the Court, is between a document signed by a third person using the signature of another, that's a forgery, versus a document signed by an authorized person but containing a promise or statement that's known to be false or did not bear on the authenticity of the document. Could I ask you about jurisdiction over debauchess? Yes. So putting aside the MDL statute, you made arguments about the MDL statute, but putting that aside, could that case have just been filed in Federal district court in Arizona? Yes. It could have been. And in fact, I think, you know, this MDL ended up with, I think, close to 100 cases. Some of those had been filed in the District of Arizona, but then transferred over to the U.S. So what's the problem, then, with jurisdiction over debauchess? If you're acknowledging it could have been filed there and there would have been jurisdiction, why isn't it just effectively that? Because to properly invoke the Court's jurisdiction, you have to have a pending Federal action. Okay. So you're saying there isn't Federal. On its own, with nothing else going on. So maybe you're saying it was supplemental jurisdiction. I'm not sure what you're saying now. Say there are no other cases about this issue, and you just try to file the debauchess case in Federal court in Arizona. Would there be jurisdiction? I don't know. There could be with diversity. I'm not understanding the question. You mean, can there be jurisdiction in the sense of – I thought you were asking whether they could file a separate case in Federal court. Well, you can only – I mean, okay, you can file it, but it's going to get dismissed if there's no jurisdiction. So my question is, is there Federal jurisdiction over the debauchess case if we just look at it on its own and forget about the other cases? No, because there's no debauchess case. All they did was the Court, when it – Assume debauchess walked into the clerk's office and filed a complaint based on all the allegations here. Would there be jurisdiction over that complaint? We understand the argument being made they didn't go through the process properly, but is there – does the Federal court in Arizona have jurisdiction over a claim that debauchess could have brought? I would say probably not, and the reason is because the amount in controversy for debauchess's individual claim would not exceed the $75,000. Is that because the home is not worth that much or because he's only seeking $5,000 in penalties? What is the amount in controversy? The amount in controversy – there's a statutory penalty for violation of $5,000. I think you can collect actual damages, but the actual damages wouldn't be related to the value of the home. It would be related to what damages the false filing or recorded document caused to the property and somehow – and by the way, there's nothing on the record that there were any damages at all incurred to anybody as a result. And then, indeed, they were only seeking the $5,000. So it would be – it would be diversity-based and not Federal question and solely limited to the Alaskan area? Right, because there's no Federal question. How did the other cases get into Federal court? Removal on diversity, or some of them were filed there originally because they had diversity. But some of them – wasn't there originally a Federal claim also? There was class actions also. There were six, I believe, class actions. Well, but, Judge Friedland's question is good. Was there a Federal claim at some point that started these cases in Federal court? I mean, is that how they got removed in the first instance? Because if the claim is only $5,000, statutory damages, you're never going to get to the amount involved. Well, remember there was a 12-count complaint, so there were other causes of action. But those were discharged along the way? Those were dismissed. Was one of those causes of action the Federal court cause of action? Or a Federal law cause of action? Yeah, I don't remember. I don't mean to dance on the head of a pin here, but I think there may be, at this point, we don't want to question the jurisdiction as to all the other cases, but I'm not sure why DeBadge's jurisdictional basis wouldn't be the same as what everybody else had. And if he hadn't been in the case before, nothing would preclude him from filing the Federal law cause of action that had been dismissed by other parties. I do recall Judge Teelberg asking about those issues of the jurisdiction, the Federal jurisdiction, of all of the cases. And we briefed it below. And we did brief it on the issue that there was diversity based on the amount in controversy. What I can't remember, Your Honor, is whether it was based on that single count because of the attorney's fees and whatnot. I just don't remember. But I do know that the district court did take a look at its jurisdiction of all these cases and not just DeBadge's one. Let me try a variation on the theme. Suppose, well, first you can let me know whether anything like this actually happened. Was there any request to the court, I mean, the court ordered an amended complaint to be filed, what's come to be called the CAC. Yes. Was there any request made to the court or any permission granted by the court to add additional plaintiffs at that time? No. And that's. So the complaint now, your complaint really isn't articulated as a no Federal jurisdiction for this cause of action. It appears to me to be articulated that permission wasn't granted by the court to amend the complaint to add additional plaintiffs. And to the extent this is an MDL, which frankly baffles me because everybody is in Arizona, but it did go through the multi-district litigation panel. And so if a new claim is filed in Texas, for example, that Texas person couldn't go to Arizona and file it. They'd need to have it routed through the MDL. What's confusing about this case is that DeBadge's is Arizona and would seem to have no question about the District of Arizona's jurisdiction if you can get over the Federal hurdle. But if permission wasn't requested of the court, there's a question as to whether you can amend the complaint without obtaining that permission. Is that the core of your challenge? That is exactly it. Because, like I said, there were plaintiffs who did arise in the District of Arizona and they filed a complaint and it was transferred over to the MDL proceedings. So wherever the case came from, whether it was filed originally in the District of Arizona or elsewhere, they had to be transferred into the MDL. In DeBadge's case, there was no case. The court ordered all these cases to the plaintiffs. They asked the plaintiffs really as a matter of judicial economy to bring it as a consolidated amended complaint, bring them all in one document. When the plaintiffs did that, they just added DeBadge's as a party to that pending Federal action. So it was never in the MDL in the first place. And because 1407 should be strictly construed in terms of what the MDL jurisdiction is, there was no pending Federal action. And 1407 is pretty clear that the MDL is limited to only consider pretrial, I may add. The problem there is you've got a case from Texas that winds up being in a courtroom in Phoenix. Right. But the Phoenix judge's authority is finite. Yes. If you've got a case that could have been filed in Phoenix in the first place, you don't have so much a multidistrict litigation problem, but it is an MDL proceeding. Exactly. And so you'd need to touch at least one of the two bases, either the MTL process or I think Judge Steelberg could have directly given permission to add parties, but you're telling me that didn't happen. It did not happen. And by the way, when Judge Steelberg dismissed count one, the first go-around that was appealed here, for DeBadges, who was in the consolidated plaintiff, he didn't dismiss it on the merits. He said, I'm not going to — I'm dismissing DeBadges because you weren't named properly as a plaintiff. Well, let me ask you about that. And I'm realizing I'm taking your colleague's time, so he may have something to say about it, too. But is — if we would decide on the merits with regard to all the other plaintiffs that the claim is gone, is there really any reason to discuss DeBadges separately? Because the substance of the DeBadges claim is exactly the same as the substance of the others, as best I can discern. Absolutely. Just that Judge Steelberg decided I don't even have to get to that issue for DeBadges, but if we get to the issue from the others, from our perspective, it might be easier to deal with them all at once. And you have no problem with us deciding that substantively they're all covered the same way. We have no problem. I think what Judge Steelberg was saying essentially is I can't decide DeBadges because I don't have jurisdiction. Okay. And so it's not that he didn't get to it. He just felt he didn't have jurisdiction on it. And we briefed that below for him as well. Okay. Thank you. Good morning, and may it please the Court. My name is Joseph Yannowskis. I am here on behalf of the defendants in the Robinson and Silva's cases, other than Mertz. I don't have a dog in the fight as to DeBadges. The court asked a question about jurisdiction, and so I had a chance to take a look at the consolidated amendment complaint. If the court would look at paragraph 1D, the plaintiffs were invoking CAFA jurisdiction, over 5 million, putative class action, over 100 members, and that was the basis for jurisdiction below. I'm not in DeBadges' case, so I can't speak to the issues. That helps us understand how we got here. I appreciate that. There were actually seven separate class action files in seven states, and they ended up getting consolidated by the judicial panel, and they all went to Arizona, and then he ordered consolidation after a couple of years into one consolidated amendment complaint. But all the people we have left, because there hasn't been a class action certified, what we have left in front of us now are individual claims, all of which come from Arizona. Correct. Okay. Your Honor, our clients were — the subject was granted on our clients, not only on the basis for lack of forgery, but also on the notice point. And I did want to address Judge Clifton's questions about favorable law for the plaintiffs. First, there are three cases cited in footnote 12 of our brief where courts apply the notice provision to statutory claims very similar to these. The Niaz case, the Tanner case, and the Giotta case, which are all cited in our brief. They all involve foreclosure cases. They all involve violations of state statutes of various stripes. They were in Arizona, I don't believe, but various state statutes. Which brief is yours? I've got four. Wells Fargo, Bank of America. Got it. Thank you. They're footnote 12 in those three cases. Now, my adversary, Ms. Edwards, pointed out to cases embedded in my cases that she says are favorable to her, which apparently I haven't had a chance to read them either because she didn't cite them in her brief. However, she mentioned that they — courts refused to apply this notice provision to TILA claims. And I think there's a fair — without having read the cases, I think there's a fairly simple reason why the notice provision would not apply to a TILA claim. The notice provision in paragraph 20 says that no party, neither party to the deed of trust, can file a lawsuit without giving notice to the other from actions arising from the deed of trust. A TILA claim does not involve the deed of trust. A TILA claim involves origination of the loan on the origination side, and there are typically disclosures that the lender has to give to the borrower before making the loan about the interest rate and the loan terms. And so that wouldn't be — if you had a dispute with your lender about TILA disclosures that were given, it would not involve actions that arise from the deed of trust. So we believe Judge Tillburg correctly applied that provision to — to the claims brought by Silverson and Robinson, correctly entered summary judgment in our favor on those grounds. The other basis — Kennedy, but we wouldn't need to reach those grounds if we wind up concluding on the grounds that apply to everybody. Absolutely. I didn't want to overlap with Mr. Brochin, but we agree, and I think the plaintiffs have conceded there is no evidence of forgery. And so we would win on that ground as well. This is an alternative ground. The only other point I would make is Plaintiff Silvers, Judge Tillburg, entered summary judgment against her because she had released her claims. She entered into a settlement with Bank of America. Money was paid to her. There was a very broad release that applied to claims that she brought or could have brought involving the servicing of her loan, her property, her deed of trust, and she settled those claims. Plaintiff's argument in this Court is that it was not my intent to release those to try to support her view that it was not their intent to release the claims, count one, that was left. And Judge Tillburg correctly rejected that. In fact, in paragraph L of that agreement, there's an integration clause which says this is the party's entire agreement. And also it goes further, broader than some integration clauses I have seen, and says also that no party may use extrinsic evidence to show the intent and to try to construe this agreement. So that clause is extremely strong in our provision in barring any attempt by the plaintiff to try to show that she did not intend to waive those claims and release those claims. Another alternative theory as well. Finally, Your Honor, just on the point of the mandate, I just wanted to direct the Court, and I do endorse everything that Mr. Brochin said, I also want to direct the Court. There's direct evidence of what the panel in issuing the mandate meant from its first decision. So if the Court would look at page 782 of the MERS 1 decision, it's 754 F3rd at 782, the Court says the complaint alleges that these documents were notarized in blank and, quote, robo-signed with forged signatures. And then at page 783 to 784, we had moved to dismiss that claim on the ground that it wasn't specific enough. And at 783 to 784 under Rule 9b, the court of appeals said why it, the panel in that it gave examples of the claims, and it talked about documents where a party that is represented to have signed the document did not sign the document. Another allegation was that Michael Bosco did not sign the document. There was another allegation that a document was notarized in blank, and so forth and so on. Another allegation that many of the signatures appear visibly different than one another. So those are the kind of claims that we typically understand to be within the ambit of forgery and why I believe the Court is correctly concerned that the mandate has limited the plaintiff's claims to that and there has been no evidence of that. And so summary judgment was appropriately entered on that ground we'd ask the Court to affirm. If the Court has nothing further. Thank you. Thank you. Go on to the question related to where in the record we discussed the jurisdictional issues. There were a number of documents that the parties filed in response to specific inquiries from the Court related to the jurisdiction. And the clerk's record numbers are 2048, 2052, 2055 through 2057, 2061 through 2065. And was DeBadgis part of that or was that all before DeBadgis? Yes, Your Honor. DeBadgis was included within these documents because that's where the Court basically took a step back and said I want additional briefing on this jurisdictional issue. Not only as to Mr. DeBadgis, but as to all the plaintiffs who were left in the, he even went back to the underlying consolidated amended complaint. So that's where we covered that. And we did request leave to amend from Judge Teelburg before we filed that consolidated amended complaint. And the judge, Judge Teelburg basically issued an order that said file a consolidated amended complaint that covers all the plaintiffs by a certain date, which we did. We included Mr. ---- Could you say anything about adding additional plaintiffs? He did not ---- I mean, there's something different between consolidating plaintiffs, the fine term people already in front of them, and somebody from the outside. There's no reason I can think of why permission couldn't have been sought. Maybe it didn't occur to anyone. But it doesn't sound like he was ever asked to give permission to add additional parties. The proposed amended complaint included the additional parties as part of the motion under the rule that requires a red line attachment. So it was ---- So it was flagged for him to consider. Maybe it didn't come up separately, but you would argue that gave sufficient notice to the court and the permission given by the court was enough to reach the DeBagas claim. Correct. Okay. Going back to the forgery issue and the citation to the United States versus Price and the two examples that are given in there related to forgery where the document is signed by someone who is, they are signing their name, but they don't have authority to sign that particular document. Using an analogy, it's like if property owner gives a special power of attorney to X to sign warranty deeds to transfer his property, and then property owner transfers his property signed in his own signature on a warranty deed to B, then X comes along after that and signs a warranty deed under his authority given under that power of attorney to C, that warranty deed to C is invalid and a forgery under the ---- Well, it may be invalid, but I don't know that it's invalid because it's a forgery. It's invalid because it's an excess of the power given by the power of attorney. But if a person is signing his own name, that's not forgery, as the forgery is commonly understood and defined by at least some cases from this Court. Under the United States v. Price case, which was decided by this Court, it's an example of the forged checks. It's the same type of example as the second example of forgery set forth in United States v. Price. So you accept Price, and we should look at Price to decide whether the arguments you're making fit within the definition of forgery as recognized by Price. Correct, Your Honor. Okay. And that's the ---- those are grounds for reversing the summary judgment against appellants, that there was evidence that these documents were forged because they ---- Well, there was evidence that these documents ---- if you put the word forged into your statement, it loses meaning because it requires acceptance of your definition of forged. So you're not contending that there was evidence that the persons whose name appeared on the document did not themselves apply that signature or authorize the application of the signature. You're claiming that there was something wrong with the authority they asserted to be permitted to sign that, that is, that it wasn't really a MERS authority to sign. But the signature itself does not appear to be in question as to any of the cases before us. Is that correct? That's correct. Okay. And for ---- So only if we accept this broader definition of forgery is there an argument to be made that should cause us to reach to reverse the summary judgment. There is. And the actual factual evidence that supports the reversal under that definition is found in the plaintiff's excerpt of record and the tables were attached to Marie MacDonald's reports, which is a ---- Well, none of that has to do with authenticity of the signature. It has to do with authenticity of the documents. Okay. Thank you, counsel. We understand your argument and you're over your time. So thanks, both sides, for the arguments. The case is submitted and we are adjourned for the day. Thank you.
judges: Clifton, Friedland, Gleason